UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LIVINGSTON PARISH GRAVITY                    CIVIL ACTION
DRAINAGE DISTRICT NO. 1

VERSUS

WETLAND EQUIPMENT
COMPANY, INC.                            NO.: 15-00068-BAJ-RLB

ORDER

Before the Court are two motions in limine filed by Wetland Equipment
Company, Inc. ("Defendant"). (Docs. 20—21). Defendant seeks to limit or exclude the
testimony of two expert witnesses identified by the Livingston Parish Drainage
District No. 1 ("Plaintiff"). (*Id.*). Plaintiff opposes Defendant's motions, and
Defendant has filed replies. (Docs. 23—26). For the following reasons, Defendant's
first motion in limine is **DENIED**, and its second motion in limine is **GRANTED** in
part and **DENIED** in part.

I.  BACKGROUND

This matter arises from Defendant's sale of an amphibious excavator to
Plaintiff on September 4, 2013. On February 20, 2014, the excavator was operated on
marshy ground without incident and was then left tethered to a tree. Later, on
Sunday, February 23, 2014, the excavator was discovered capsized and floating
upside down, with water in the nearby creek having risen substantially since the
machine was brought to the site.

1

On December 15, 2014, Plaintiff filed a lawsuit against Defendant in state court. Plaintiff claims that the excavator was not built to specification, which in turn affected its stability. Plaintiff also claims that Defendant did not properly train its employees regarding the excavator's limitations. Specifically, Plaintiff alleges that its employees received verbal instructions from Defendant indicating that the excavator could be operated safely in contravention of warnings contained in the machine's safety manual. Lastly, Plaintiff alleges that Defendant sold it an excavator that was not fit for its intended purpose, because it was not capable of floating with its boom in a rotated position.

## II.  PRESENT MOTIONS

### A. *Daubert* Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 essentially codifies the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id*. at 589.

As the gatekeeper of scientific evidence, the trial court must assess whether the reasoning or methodology underlying an expert's testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 592—93. When expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v.*

*Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). To determine the admissibility of expert testimony, trial courts examine the qualifications of an expert and the methodology used in formulating their opinion. It is not the function of trial courts to determine the accuracy of the conclusion reached by an expert.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology. *Daubert*, 509 U.S. at 592—93. In *Daubert*, the Supreme Court established a non-exhaustive list of factors to consider when determining the reliability of expert testimony. *Id*. at 593—95. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id*. The applicability of these factors depends on the facts of a case, the area of expertise of an expert, and the subject of an expert's testimony. *Kumho Tire co. v. Carmichael*, 526 U.S. 137, 138 (1999).

Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

3

Moreover, the party seeking to introduce expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore*, 151 F.3d at 275—276. The proponent need not prove that the expert's testimony is correct, but most prove by a preponderance of the evidence that the methodology used by the expert was proper. *Id*.

### B. Motion to exclude the testimony of Mr. George L. Petrie

Defendant challenges the reliability of Mr. Petrie's testimony because he did not apply "the national industry standard for testing stability" as "set forth in the American Society for Testing and Materials Standard Guide F 1321, 'Standard Guide for Conducting a Stability Testing (Inclining and Lightweight Survey) to Determine the Light Ship Displacement and Centers of Gravity of a Vessel.'" (Doc. 20-1 at pp. 3—4). The Court is not persuaded that Mr. Petrie's mathematical calculations are unreliable simply because a more contemporary process exists to determine the stability of traditional hull-formed vessels. Mr. Petrie rendered calculations from measurements taken of the excavator at issue. Viewed in light of his qualifications and background, the Court finds that Mr. Petrie's application of fundamental math and physics principles rests upon a reliable foundation as opposed to unsupported speculation. Defendant is free to cross examine Mr. Petrie about the accuracy of his calculations in light of the standard it has identified.

Defendant also argues that Mr. Petrie's testimony is unnecessary, because it simply confirms what is stated in the excavator's safety manual: that "the excavator will become unstable while floating if the boom is not set at a forward-aft position

4

centered between the pontoons." (*Id*. at p. 2). Yet this overlap does not wholly undermine the relevancy of Mr. Petrie's testimony. A key component of Plaintiff's lawsuit is its claim that Defendant verbally represented that the excavator was operable while in a floating attitude, as long as its boom stayed within a certain range of motion. Mr. Petrie is qualified to opine on the excavator's stability in a floating attitude when its boom is within this range of motion purportedly sanctioned by Defendant. Such testimony is more specific than generalized warnings contained in the excavator's instruction manual. Furthermore, to the extent Plaintiff demonstrates that the excavator was not built to specification, Mr. Petrie is qualified to opine as to how such a deviation affected its stability.[1] For these reasons, the Court will permit Mr. Petrie to testify as a naval architect in this matter.

### C. Motion to exclude the testimony of Holt H. Fastring

Defendant attacks Mr. Fastring's qualifications to render an opinion on the stability of floating objects. (Doc. 21-1 at pp. 2—4). Additionally, Defendant asserts that Mr. Fastring simply relied upon Mr. Petrie's calculations to render his own report, thereby rendering it unreliable. (*Id*. at pp. 5—6).

Mr. Fastring stated during his deposition that he is not qualified to opine on the stability of floating objects. He also stated that he did not conduct any testing on the excavator. During oral argument, Plaintiff conceded that Mr. Fastring did not conduct his own evaluation or calculations regarding the stability of the excavator in a floating attitude. Plaintiff further acknowledged that Mr. Fastring simply assisted

---

[1] The parties dispute whether the excavator was built eleven inches more narrow than called for in the machine's design specifications.

Mr. Petrie in measuring and weighing the excavator. Mr. Petrie used this data to conduct his analysis, the results of which Mr. Fastring then incorporated into his report.

Mr. Fastring will not be permitted to testify as an expert regarding the stability of the excavator while it is afloat, as he does not dispute that such testimony falls outside the scope of his field of expertise. Mr. Fastring will also not be permitted to testify regarding conclusions contained in his report that are derived solely from— and simply reproduce—calculations and conclusions reached by Mr. Petrie. However, if necessary, the Court will permit Mr. Fastring to testify for the limited purpose of describing the measurements he took of the excavator. Given his experience as a mechanical and safety engineer, Mr. Fastring is qualified to opine on the appropriateness of his measurements in light of the design specifications of the excavator.

III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's ***Daubert*** **Motion in Limine to Exclude Testimony of Mr. George L. Petrie (Doc. 20)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's ***Daubert*** **Motion in Limine to Exclude Testimony from Holt H. Fastring (Doc. 21)** is **GRANTED** in part and **DENIED** in part.

Baton Rouge, Louisiana, this 22nd day of August, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

7